

FILED
Jun 04 2019, 2:42 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Indiana Supreme Court

Supreme Court Case No. 18S-PL-584

## Daniel O'Bryant, d/b/a O'Bryant Transport, LLC,

*Appellant,*

—v—

## Alan P. Adams, Luan Adams, d/b/a A.L.A. Trucking, Inc.,

*Appellees.*

---

Argued: January 10, 2019 | Decided: June 4, 2019

Appeal from the Madison Circuit Court, No. 48C01-1703-PL-19
The Honorable Angela Warner Sims, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 48A02-1711-PL-2709

---

**Opinion by Justice Slaughter**

Chief Justice Rush and Justices Massa and Goff concur.

Justice David concurs in result.

**Slaughter, Justice.**

We hold that a valid forum-selection clause, in which the parties agree by contract to litigate their disputes in a specific forum, does not deprive a trial court of personal jurisdiction over parties that would otherwise be subject to the court's jurisdiction. Thus, the trial court erred in dismissing the plaintiff's claims against the Indiana-resident defendants under Trial Rule 12(B)(2). But we nevertheless affirm the court's without-prejudice dismissal on this record for two reasons. First, the disputed forum-selection clause is mandatory and unambiguous in requiring that suit be brought in Texas not Indiana. And, second, the plaintiff has not satisfied its burden of showing that the clause is invalid. Thus, the trial court was correct to dismiss the amended Indiana complaint without prejudice, though for a reason other than lack of personal jurisdiction.

# Factual and Procedural History

The parties are in the transportation business. O'Bryant Transport, LLC, and A.L.A. Trucking, Inc., entered into an independent-contractor agreement. Under the agreement, A.L.A. Trucking was seeking truck-driving services, and O'Bryant Transport agreed to provide them. Their agreement contains a forum-selection clause providing that the agreement was prepared under Texas law; that the laws of "this state" shall apply; and, relevant here, that suit must be brought in "this state".

> This Agreement shall be deemed to have been drawn in accordance with the statutes and laws of the State of Texas and in the event of any disagreement or litigation, the laws of this state shall apply and suit must be brought in this state, except that CARRIER [A.L.A. Trucking] may bring suit against INDEPENDENT CONTRACTOR [O'Bryant Transport] in any state where INDEPENDENT CONTRACTOR resides or is located.

More than a year later, the plaintiff, Daniel O'Bryant, alleged breach of contract and sued in the Circuit Court of Madison County, Indiana. He

claimed that A.L.A. Trucking breached the agreement by treating him, apparently a principal of O'Bryant Transport, as an A.L.A. employee rather than an independent contractor and did not pay him salary or benefits for most of the prior year. We say "apparently" because the agreement lists the contracting party as the LLC, a limited-liability company, and shows Daniel as signing on its behalf. Yet the amended complaint, the operative pleading here, recites Daniel as the aggrieved party and lists the LLC as merely a "dba" and not a separate legal entity. The lower courts did not address Daniel's standing to sue for breach of an agreement to which he is not a party. And neither shall we.

O'Bryant also sued for fraudulent inducement, alleging he was induced to sign the agreement by A.L.A.'s "material misrepresentations" concerning the work he was to do. The suit named as defendants Alan P. Adams and Luan Adams, as "owners"—presumably meaning shareholders—of A.L.A. Trucking, Inc. The Adamses are residents of Indiana, and A.L.A. Trucking is an Indiana for-profit corporation doing business in Indiana. According to O'Bryant, the Adamses are alter egos of A.L.A. Trucking, and he seeks to pierce the corporate veil and hold them personally liable for any obligations of the corporation. In the lawsuit's caption, O'Bryant lists the counterparty, A.L.A. Trucking, as a "dba" rather than the separate legal entity his own complaint alleges it to be. Again, the lower courts ignore this issue, and so shall we.

The defendants moved to dismiss the amended complaint on two separate grounds. The first, under Rule 12(B)(2), is that the Indiana trial court lacked personal jurisdiction over these defendants because the parties agreed to litigate their dispute in Texas. The second ground, under Rule 12(B)(6), seeks partial dismissal of the veil-piercing claims against the Adamses because the allegations are insufficient to subject them to liability for obligations of the corporation. The other 12(B)(6) request is to dismiss count 2, the fraud claim, because the plaintiff failed to plead fraud with the specificity required by Rule 9(B).

O'Bryant objected to dismissal under Rule 12(B)(2), arguing that the phrase "this state" within the forum-selection clause refers not to Texas but Indiana; that the clause is ambiguous and permissive; and that

requiring Indiana parties to litigate their dispute in Texas is unreasonable and unjust. The trial court disagreed. It held that the forum-selection clause is unambiguous and mandatory; that "this state" refers to Texas; and that the clause is enforceable. The court dismissed O'Bryant's amended complaint without prejudice.

O'Bryant then filed a motion to correct error. He argued, among other things, that newly discovered evidence, consisting of an affidavit from his counsel describing communications with an unidentified Texas lawyer, establishes that a Texas court would not enforce the forum-selection clause. The trial court denied the motion, and O'Bryant appealed. But his notice of appeal identified only the trial court's original entry as the order being appealed and not its later denial of his motion to correct error. The court of appeals affirmed the 12(B)(2) dismissal in a precedential opinion. *O'Bryant v. Adams*, 108 N.E.3d 933 (Ind. Ct. App. 2018), trans. granted.

## Standard of Review

We review de novo the trial court's dismissal of O'Bryant's amended complaint for lack of personal jurisdiction. *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 965 (Ind. 2006).

## Discussion and Decision

### A. The forum-selection clause is mandatory and unambiguous.

Parties to a contract are generally free to bargain for the terms that will govern their relationship. They can decide, among other things, what law will govern; whether disputes arising between them will be resolved publicly (in a court of law) or privately (in arbitration); and where any disputes will be resolved. At issue here is the last category—where O'Bryant Transport must assert its claims against A.L.A. Trucking.

The parties' agreement contains a forum-selection clause, which provides in pertinent part: "This Agreement shall be deemed to have been

drawn in accordance with the statutes and laws of the State of Texas and in the event of any disagreement or litigation, the laws of this state shall apply and suit must be brought in this state[.]" This case turns on the meaning of "suit must be brought in this state". The phrase "must be brought" is mandatory. It requires O'Bryant to bring suit, if at all, in the specified forum.

The forum specified in the agreement—"this state"—refers unambiguously to Texas. Texas is the only state mentioned within that sentence and, indeed, within the entire paragraph. There is no other plausible reading of this term. We are not swayed by O'Bryant's contrary argument that "this state" must mean Indiana because that is where the parties executed the agreement. If the parties had intended Indiana to be a forum where O'Bryant Transport could file suit, they could have recited that intention expressly. Indeed, the identification of "Indiana" in the final paragraph shows the parties know how to refer to Indiana when they want to. They did so specifically in the closing paragraph but not in the paragraph containing the forum-selection clause. The clear take-away is that the parties intended to identify Indiana as the state where they were executing their agreement but not the state where they agreed O'Bryant must sue to enforce it.

We thus agree with the court of appeals' resolution of this issue, though for a different reason. The court held that "this state" means Texas because the interpretive canon *ejusdem generis*—"of the same kind"—compels that result. 108 N.E.3d at 939. There are two issues worth mentioning with the court's approach. First, courts need not resort to interpretive canons at all when a word or phrase is unambiguous. In such circumstances, we simply apply the text's plain meaning. Once the court of appeals concluded (correctly) that "this state" unambiguously means Texas, it was unnecessary to invoke this or any other interpretative canon.

Second, the *ejusdem generis* canon does not apply here for another reason. The canon applies only when a list of **more than one item** within an enumeration is followed by a catch-all phrase at the end. The meaning of the catch-all phrase turns on the nature of the items within the enumerated list. Scalia and Garner explain the canon this way: "Where

general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned[.]" Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 199 (2012).

Suppose, for example, an invitation to a party says the menu will consist of "hamburgers, hot dogs, and other like food." Under common usage, we expect "other like food" to be defined with reference to the foods listed. Hamburgers and hot dogs are casual foods, inexpensive, and easy to prepare. Because they "all belong to an obvious and readily identifiable genus", we expect that "the speaker or writer has that category in mind for the entire passage." *Id*. Given the invitation's list of specified foods, it would come as little surprise if the host also served baked beans and potato salad. But no one would expect the menu to include lobster thermidor or pheasant under glass.

Here, the disputed contract contains no antecedent list of other items to which the reader can refer to interpret the meaning of "this state". Just as it takes two points to determine a line in geometry, it takes at least two items within a list to establish a pattern from which a generic catch-all phrase at the end of the list can be interpreted under the *ejusdem generis* canon. Stated differently, the canon applies only to the following format— "A, B, [C, etc.] and other like items"—which is not present here.

## B. The forum-selection clause is valid and enforceable.

Indiana puts a premium on parties' freedom of contract, and we presume that contracts represent the parties' freely bargained agreements. *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012). Especially where the contracting parties are commercial entities, the party resisting a forum-selection clause bears an especially onerous burden of showing it was neither "freely negotiated" nor "reasonable and just", which is what Indiana law requires for such clauses to be enforced. *Carmeuse Lime & Stone v. Illini State Trucking, Inc.*, 986 N.E.2d 271, 276, 277 (Ind. Ct. App. 2013).

O'Bryant's transfer petition argues that the forum-selection clause deprives him of a meaningful forum for vindicating his claims. "Plaintiff simply has no legal remedy in the State of Texas and that is shown by the affidavit submitted by plaintiff's counsel"—which avers that an unidentified Texas lawyer told O'Bryant that Texas courts would not afford him a remedy because neither party "maintained an operational business in that state and therefore, the State of Texas would not accept personal jurisdiction over the parties to any law suit."

This argument fails for several reasons. First, it is waived. O'Bryant raised this argument in a motion to correct error filed after the trial court had dismissed his amended complaint, and he failed to establish this argument was unavailable during the original proceedings. Moreover, once the trial court denied his motion to correct error, O'Bryant did not appeal that order. His notice of appeal recites that he was appealing only the initial entry dismissing his amended complaint under Rule 12(B)(2) but not the subsequent order denying his motion to correct error. His failure to appeal the latter order also waives this issue on appeal.

Apart from waiver, the argument is meritless. It would have been reversible error had the trial court afforded O'Bryant relief from the forum-selection clause based on the thin content of his lawyer's affidavit—not just the hearsay statement of the unnamed Texas lawyer but the dubious legal conclusion that Texas would "not accept personal jurisdiction over the[se] parties" because they did not "maintain[] an operational business" there. O'Bryant cites no Texas authority supporting that proposition. And we have identified none. To the contrary, the law of Texas (and of most states) permits parties to consent to personal jurisdiction by contractually agreeing to litigate their disputes there. See *Abacan Tech. Servs. Ltd. v. Glob. Marine Int'l Servs. Corp.*, 994 S.W.2d 839, 845 (Tex. Ct. App. 1999) (cited favorably by *In re AIU Ins. Co.*, 148 S.W.3d 109, 112 n.5 (Tex. 2004)).

On this record, O'Bryant did not satisfy his burden of establishing that the forum-selection clause was invalid.

## C. The validity of the forum-selection clause does not divest the Indiana trial court of personal jurisdiction over these Indiana parties.

Given our conclusion that the forum-selection clause is valid, unambiguous, and mandatory in requiring that O'Bryant file suit in Texas, we turn next to consider the appropriate remedy for his having sued in Indiana. A.L.A. Transport and the trial court understandably relied on settled, controlling precedent from our court of appeals in seeking and granting, respectively, the dismissal of O'Bryant's amended complaint under Trial Rule 12(B)(2). See, e.g., *Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43, 48 (Ind. Ct. App. 2005); *Grott v. Jim Barna Log Sys.-Midwest, Inc.*, 794 N.E.2d 1098, 1101-02 (Ind. Ct. App. 2003), trans. denied. But neither *Dexter Axle*, *Grott*, nor the appellate opinion below analyzed an Indiana court's personal jurisdiction over parties that agreed to sue elsewhere. Instead, these decisions assessed whether the disputed forum-selection clauses were enforceable and concluded they were.

We hold that a valid forum-selection clause does not divest a trial court of personal jurisdiction over parties otherwise subject to the court's jurisdiction. Parties are free to consent to having their disputes litigated in a forum in which they would not otherwise be amenable to suit. And when they elect to do so, as here, they submit to the personal jurisdiction of the distant forum. But by consenting to personal jurisdiction in a different forum, they do not thereby deprive other jurisdictions—such as those where they live and do business—of personal jurisdiction, too. Personal jurisdiction is not a zero-sum game in which agreeing to personal jurisdiction elsewhere divests jurisdiction at home. Thus, the parties' consent to suit in Texas did not deprive the court below of personal jurisdiction. The parties, all residents of Indiana or companies doing business here, remain subject to the jurisdiction of an Indiana tribunal. The trial court thus erred in dismissing O'Bryant's amended complaint under Rule 12(B)(2). We specifically disapprove of *Dexter Axle* and *Grott* to the extent they authorize a 12(B)(2) dismissal whenever parties have agreed to litigate their disputes in a different forum.

As an aside, we note that a dismissal for lack of personal jurisdiction does not adjudicate the merits but merely requires that the merits be litigated elsewhere—in a forum in which the parties are amenable to suit. Here, the defendants sought dismissal of the amended complaint "with prejudice"—a proposed merits disposition that can have preclusive effect in other litigation. Given the posture of this case and the trial court's dismissal without prejudice, we do not decide whether a defendant waives an objection to personal jurisdiction by seeking a dismissal with prejudice. We leave that issue for another day.

## D. We recognize an alternative motion for enforcing a forum-selection clause.

Finally, having concluded that 12(B)(2) is not the correct vehicle for enforcing a forum-selection clause, we recognize an alternative for obtaining that relief.

One option is for the defendant to file a stand-alone motion to enforce a forum-selection clause, arguing the parties' written agreement requires their dispute to be litigated elsewhere. See generally Bradley Scott Shannon, *Enforcing Forum-Selection Clauses*, 66 Hastings L.J. 777 (2015). The motion should recite the clause within the motion's four corners or attach it as a separate document if it is not part of the complaint. Unless the plaintiff contests the clause's enforceability, the court can interpret the clause and dismiss the complaint without prejudice if the plaintiff sued in an unauthorized forum. If the plaintiff contests the clause's validity— alleging it to be, say, unfair or the product of unequal bargaining power— the court may need to hold a mini-trial to resolve factual disputes on the threshold question of the clause's enforceability. Such a limited trial is necessarily antecedent to deciding what the clause means and whether dismissal is required to effectuate its meaning. Courts must occasionally resolve factual disputes before deciding threshold questions of subject-matter or personal jurisdiction. The same is true of facts underlying the validity of a forum-selection clause. And, as a belt-and-suspenders measure, a defendant wanting to protect itself from costly collateral litigation over the validity of a presumptively valid forum-selection clause

can include in its contract a requirement that the breaching party pay the costs and attorney's fees the aggrieved party incurs to enforce the clause.

By recognizing this procedural vehicle, we do not foreclose other possible options for enforcing a forum-selection clause against a litigant that sued in an unapproved forum. Once our opinion is certified, we will ask our rules committee to consider various options for amending our rules of trial procedure to formalize a process for enforcing forum-selection clauses.

# Conclusion

For these reasons, we affirm the trial court's dismissal of the amended complaint without prejudice. Although the court erred in basing its dismissal on lack of personal jurisdiction, dismissal was nevertheless warranted on this record. The disputed forum-selection clause is mandatory and unambiguous in requiring that suit be brought in Texas. And the plaintiff did not satisfy its burden of showing that the clause is invalid and thus unenforceable.

Rush, C.J., and Massa and Goff, JJ., concur.
David, J., concurs in result.

ATTORNEY FOR APPELLANT
Scott A. Norrick
Scott A. Norrick, P.C.
Anderson, Indiana

ATTORNEY FOR APPELLEES
Andrew F. Marquis
Scopelitis Garvin Light Hanson & Feary, P.C.
Indianapolis, Indiana